UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORTHOFIX INC.,

        Plaintiff,                                  No. 13-11421

v.                                             District Judge Stephen J. Murphy, III
                                                 Magistrate Judge R. Steven Whalen

ROBERT LEMANSKI,

        Defendant.

_____/

**ORDER**

      Before the Court is Defendant Robert Lemanski's Motion to Compel Production of Damages Documents [Doc. #32], filed publicly, and the same motion filed under seal [Doc. #34]. For the reasons and under the terms discussed below, the motions are GRANTED IN PART AND DENIED IN PART.

**I.    BACKGROUND**

      This is a wrongful competition case. Plaintiff Orthofix, Inc. ("Orthofix") produces and markets bone-growth stimulators. Defendant Robert Lemanski ("Lemanski") and Eric Hunter ("Hunter") were employed by Orthofix. Lemanski sold bone-growth stimulators to spinal surgeons in the Detroit area, and Hunter sold in the Toledo, Ohio area. Orthofix alleges that both Lemanski and Hunter resigned in November of 2012, to join a competitor, DJO Global LLC, and that they misappropriated and took customer account identities, sales histories, product preferences, and other trade secrets. In its amended complaint [Doc. #9], Orthofix alleged five claims: (1) breach of a contractual non-solicitation provision (Count I); (2) breach of a contractual unfair competition provision (Count II); (3) breach of contractual promise not to disclose confidential information (Count III); (4) trade secret misappropriation

(Count IV); and (5) tortious interference with business relations (Count V). On March 25, 2015, the Court dismissed Counts III, IV, and V [Doc. #87]. Orthofix seeks monetary damages on the remaining Counts I and II.

In this motion, Lemanski seeks discovery regarding Orthofix's claim for damages. At the Court's direction, the parties filed a Joint List of Unresolved Issues [Doc.#45] that sets forth the following contested matters relating to Lemanski's discovery requests:

(1) Unit-by-unit detail of Orthofix's sales by customer;

(2) Sales outside Lemanski's former territory;

(3) Profit and loss information;

(4) Orthofix's total production capacity, on a monthly basis, to produce and sell bone-growth stimulators;

(5) Orthofix's sales data from 2007 to 2012.

## II. LEGAL PRINCIPLES RE: DISCOVERY

It is well established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). In exercising its discretion, the court should first consider Fed.R.Civ.P. 26(b)(1), which states, in pertinent part:

> "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action...All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." (Emphasis added).

Rule 26(b)(2) states, in pertinent part:

> "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that : (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought;

or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c)."

### III. DISCUSSION

#### A. Unit-by-Unit Sales Data

Lemanski seeks the following information as to each stimulator he sold to his former customers: (1) units sold, (2) price per unit, (3) revenue per unit, (4) cost per unit, and (5) profit per unit. Orthofix has produced monthly average profit margins and unit prices, and specifically, data showing profit margins for each of the products at issue for all regions.

Orthofix noted that in its lawsuit against Hunter in the Northern District of Ohio, *Orthofix, Inc. v. Eric W. Hunter*, No. 3:13-CV-828, Judge Zouhary considered the same discovery request at issue in this case. Judge Zouhary noted Orthofix's position that "variations in purchase price or commissions paid are reflected in the monthly average profit margin and unit prices already provided," and found that "Orthofix does not need to create 'custom reports' with the information [Lemanski's partner] Hunter seeks." Arguing that it is its burden to prove damages, Orthofix seeks the same limitation in the present case, and that it would be overly burdensome for it to create "custom reports."

Since this motion was argued, three significant events have occurred. First, following the discovery decision in the *Hunter* case in the Northern District of Ohio, and days before the scheduled trial date there, Orthofix informed Judge Zouhary that the spreadsheets it previously contended could be used to derive the requested information were highly inaccurate. In an email to Judge Zahoury (with copies to defense counsel), dated July 9, 2014, counsel for Orthofix stated:

> "Counsel for Orthofix have requested a brief teleconference to alert the Court to an unfortunate situation that came to our attention over the holiday weekend and was confirmed by Orthofix yesterday: Sales reports prepared by the Orthofix finance department which were the basis for Orthofix's expert's damage calculations overstated sales in the relevant period by approximately double. This overstatement was the result of an IT error in generating the report from Orthofix's database, which caused duplicate sales to be reported. As a result of this bad data unrecognized by Orthfix, its counsel, or its expert, Orthofix's expert's report overstated Orghofix's damages." *Defendant's Motion for Leave to File Sur-Reply* [Doc. #55], Exhibit B.

The second event was the ruling in a similar discovery motion in another Orthofix case filed in the Central District of Illinois, *Orthofix, Inc. v. Melissa Gordon*, C.D. Ill. No. 13-cv-1463. *See Defendant's Supplemental Brief* [Doc. #68], Exhibit A. In the *Gordon* case, Magistrate Judge Schanzle-Haskins acknowledged that similar discovery issues were raised in the present Lemanski case and the Northern District of Ohio case, and that the same counsel represents the Defendants in all three cases. Noting the error in Orthofix's damages calculations in the *Hunter* case, and the fact that Judge Zahoury granted the Defendant's motion for sanctions in that case, Judge Schanzle-Haskins stated, "The problems with the damage calculations in the Hunter litigation...may certainly be considered by the Court in ruling on the discovery motions now pending in this litigation." Responding to Orthofix's argument–and Judge Zahoury's ruling–that it was not required to create a "custom report" on a transaction by transaction basis, and noting that at oral argument in the present (Lemanski) motion, counsel for Orthofix stated that "the underlying data is likely there," Judge Schanzle-Haskins indicated:

> "Hence, there appears to be an alternative to creating a 'custom report.' the alternative would be to turn over the underlying data to the Defendant who could make an analysis of the underlying data to challenge the 'average' profit figures compiled by Orthofix."

The Judge also stated, "It is reasonable that the problems with the Plaintiff's damage calculation prompts the Defendant to seek underlying data in order to ensure the validity and

-4-

accuracy of the Plaintiff's damage calculations." Ultimately, Judge Schanzle-Haskins directed the parties to provide the Court with information as to the amount of labor and cost that would be involved in producing the more detailed data regarding Orthofix's sales and whether "the information sought is cumulative or duplicative of the information already provided, or could be obtained from some other source that is less burdensome or less expensive."

The third event was this Court's March 25, 2015 Order granting partial summary judgment to Defendant, and dismissing Counts III, IV, and V. In so ruling, the Court found that Counts III, IV, and V were subject to dismissal under a theory of issue preclusion, based on Judge Zahoury's ruling in the bench trial in the *Hunter* case. Specifically, Judge Zahoury found that Orthofix's "playbook"– which was the aggregate of information including physician contacts, schedules, preferences, and prescribing habits, as well as sales data, order history, volume, and wholesale prices–did not constitute a trade secret or confidential information.

What, then, is the impact of these three events on the present motion? As to this Court's dismissal of Counts III, IV, and V, to the extent that the Defendant's discovery request had relevance to those Counts, it is moot. However, a measure of damages on the remaining breach of contract (non-solicitation and unfair competition) claims in Counts I and II is lost profits. *See Lawrence v. Will Darrah & Associates, Inc.*, 445 Mich. 1, 13, 516 N.W.2d 43 (1994); *Jim-Bob, Inc. v. Mehling*, 178 Mich.App. 71, 98, 433 N.W.2d 451 (1989)("[L]ost profits, if they arise from the breach and are properly proved, are an

appropriate element of damages").[1] Thus, the dismissal of Counts III, IV, and V does not diminish the relevance of the requested discovery in the context of Counts I and II.

The inadequacy of the spreadsheets showing only monthly averages as a method for calculating damages is underscored by the error in the *Hunter* case, an error that overstated Orthofix's sales by a factor of two, and which resulted in the imposition of sanctions. I agree with Judge Schanzle-Haskins that this error "may certainly be considered" with respect to the present motion. I also agree that while Judge Zahoury found in the *Hunter* case that Orthofix was not required to create a "custom report," there is an alternative: production of the underlying sales data to the Defendant, "who could make an analysis fo the underlying date to challenge the 'average' profit figures compiled by Orthofix." *Gordon Opinion*, at 10. At oral argument on this motion, Orthofix's counsel stated that "the underlying data is likely there...that shows all the commissions paid to each sales rep at Orthofix," although "it doesn't show the commissions paid...on each order made by an individual doctor." *Transcript* [Doc. #50], at 26.

At oral argument on this motion, counsel for Defendant, stating that she was not seeking "custom reports," phrased her request as follows:

> "We want to know who was paid commissions on the sales to Mr. Lemanski's customers and in what amounts so that our expert can say, I'm not applying a 23.1 average commission rate, I want to look at what commission was actually paid on those lost sales so that I can do a more full sum damages analysis." *Transcript* [Doc. #50], at 11-12.

---

[1] "[D]amages for lost profits are based on the loss of net rather than gross profits." *Lawton v. Gorman Furniture Corp.*, 90 Mich.App. 258, 267, 282 N.W.2d 797 (1979), citing *Vogue v. Shopping Centers, Inc.*, 402 Mich. 546, 266 N.W.2d 148 (1978).

-6-

At a minimum, then, Orthofix must produce the underlying data that shows the commissions paid to its sales representatives from 2009 to the present.[2] In addition, Orthofix must produce all data and other factual information that was provided to its damages expert.

Finally, Judge Schanzle-Haskins ordered the parties in the *Gordon* case to inform the Court if they had reached an agreement on the production of sales information, and if not, to provide more information as to the burden involved in producing that information. Although I am not privy to counsel's discussions in that case, Defendant's attorneys are, since they also represent Mr. Gordon. I note that there do not appear to be any follow-up orders in *Gordon* regarding these discovery requests, so counsel in that case may in fact have reached an accommodation. If Orthofix has not already done so in this case, it will provide Defendant with the same categories of sales information that it provided in *Gordon*.

Together with what Orthofix has already produced, the discovery ordered here, along with the expert depositions, should be sufficient for a critical analysis of Orthofix's claim for damages. Under the terms discussed above, the motion is GRANTED as to this category of documents.

### B. Sales Outside Lemanski's Former Territory

At oral argument on this motion, counsel indicated that Orthofix was agreeable to producing sales/revenue information for each of its five sales regions, going back to 2009, categorized on a monthly basis. *Transcript* [Doc. #50], at 27-28. Thus, the geographical aspect of the production has been resolved. In terms of substance, Orthofix will produce the categories of data discussed in Section III(A), above. As such, the motion is GRANTED as to this category of documents.

---

[2] Defendant narrowed the original request, which sought documents going back to 2007.

### C. Profit and Loss Statements

I agree with Defendant's counsel's statement at oral argument, *Transcript* [Doc. #50], at 14-15, that "99 percent of the time the profit and loss statement" is sufficient. I also find that in this case, Orthofix's profit and law statements, in conjunction with other discovery that has been provided and that has been ordered herein is sufficient. However, I will extend the time frame for production of profit and loss statements to 2009 and forward. The motion as to this category of documents is DENIED as to documents other than the profit and loss statements, but GRANTED as to the time frame of those statements.

### D. Production Capacity

In the *Gordon* case in the Central District of Illinois, the Defendant also requested information about Orthofix's production capacity for its bone growth stimulators. Denying that request, Judge Schanzle-Haskins stated, at pp. 15-16:

> "Without some evidence or factual basis to suggest sales, for which damages are sought, were unable to be made because the product could not be produced, Gordon's request seems to be based upon sheer speculation. The Court assumes that considerable discovery has taken place and no such evidence has been discovered. Unless there is some evidentiary basis to suspect that lack of production caused a lack of sales, the burden of the proposed discovery on production outweighs its likely benefit."

The same reasoning applies here. While I understand that Defendant is attempting to show an alternative basis for Orthofix's alleged loss of sales, the request for production capacity documents is largely speculative, and hence the burden of production outweighs the likely benefit. The motion is DENIED as to this request.

### E. Time Frame for Sales Data

To reiterate, the time frame for sales data documents and other discovery ordered herein shall extend back to 2009.

## IV.  CONCLUSION

Under the terms discussed above, Defendant's Motions to Compel Production of Damages Documents [Doc. #32 and #34] are GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 31, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager